<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CRAIG SZEMPLE,<br><br>      *Plaintiff*,<br><br>v.<br><br>RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY, et al.,<br><br>      *Defendants*. | Civil Action No: 3:10-cv-05445 (PGS)(DEA)<br><br>**MEMORANDUM<br>AND<br>ORDER** |

**SHERIDAN, District Judge.**

**FACTS:** the Complaint states the following:

      Plaintiff Craig Szemple ("Szemple") has been incarcerated since 1994 by the New Jersey Department of Corrections ("NJDOC"). He suffers numerous medical problems. In December 2009, he entered the East Jersey State Prison ("EJSP"), and states that his medical conditions have deteriorated to the point where he suffers extreme pain and loss of spine movement, among other issues. (Compl. ¶¶ 16-17).

      On November 27, 2006, Szemple had an MRI on both knees and lumbar spine at St. Francis Hospital showing severe degenerative changes in his left and right knees. (Id. ¶ 18). On December 2, 2006, Dr. Sackstein ordered a flat sheeted bed for Szemple and called for an increase in his pain medications as well as hot therapeutic baths to relieve back pain. (Id. ¶ 19). Szemple had previously used the therapeutic bath at EJSP, but he is now denied use of it for unknown reasons. (Id. ¶ 20). On December 2, 2006, Dr. Tahmoush, a neurologist, saw Szemple and said that his overall health is in severe decline, also leading to a decline in his mental health,

as shown by his depression and loss of sleep. (Id. ¶ 21). Dr. Pizzi and Dr. Tahmoush have also noted, from additional MRIs, that Szemple has degenerative disk disease and bulging disks of the lumbar spine, stenosis, advanced arthritis in the spine, complex regional pain syndrome, and other problems. (Id. ¶ 22). Doctors have said that his back problems stem from the bed and mattress assigned to Szemple by NJDOC per instructions of Donald Mee (Administrator at EJSP). (Id. ¶ 23). Dr. Sackstein had ordered 3 mattresses to be given to Szemple but allegedly Mee, UMDNJ (now "Rutgers"), UCHC ("University Correctional Healthcare") and NJDOC have refused to comply. Instead Szemple must sleep on a 10-year old mattress in his 5' X 12' cell. (Id. ¶ 24) It should be noted that Szemple refers to UMDNJ (Rutgers) and UCHC as one entity (UMDNJ/UCHC) throughout the Complaint.

Szemple believes that he is being placed in these conditions as "punishment" for his complaints and current litigation. (Id. ¶ 25). Lt. Laptenta, an area supervisor at EJSP, approved Szemple's request in writing for a cell improvement, but allegedly later said that UMDNJ/UCHC, through Dr. Herbert Smyczek, Ph.D. (Medical Director at EJSP), denied the move. (Id. ¶ 26).

Dr. Miller, an orthopedic surgeon, saw Szemple on December 14, 2006 and said that both knees had to be replaced. Apparently knee replacement for his left knee had been recommended several times over a four year period from an orthopedic group, but Defendants had refused the operation; and this allegedly lead to the worsening condition of his other knee. (Id. ¶ 30).

On December 19, 2006, cardiologist Dr. DeStefano said that the decline in Szemple's overall health was leading to a worsening in his heart condition, and could possibly lead to a heart attack. (Id. ¶ 33).

In or about 2009, Rutgers/UCHC contracted with NJDOC to act as the exclusive provider of medical care to the New Jersey prison inmate population. (Id. ¶ 34). Szemple claims that he has not been seen by a medical specialist since Rutgers took over. Szemple also claims that Defendants have failed to adequately treat his arms, so that surgery had to be performed. However, due to the delay in the treatment, a neurologist said that the procedure did little to improve his condition (nerve palsy, carpal tunnel, and more), and should continue to worsen in his living environment. (Id. ¶ 38).

When Rutgers took over, they initially continued Szemple's cocktail of pain medication drugs. But in September 2009, Szemple nearly bled to death from a dental/medical incident "due to defendants' actions, and the pain meds were changed to save money for defendants," according to the Complaint. (Id. ¶ 49).

As of August 2010, the Complaint alleges that Dr. Smyczek told Szemple that Defendants would stop providing Szemple with his pain medications, for no apparent reason, which were prescribed by Dr. Sackstein. (Id. ¶ 40). Without consulting his primary medical specialist first, Szemple was allegedly told that he had to choose between getting the pain medications and staying permanently in the infirmary, or staying in the general population and be taken off all pain medication. Szemple claims that being confined to the infirmary and isolated from the rest of the prison population is essentially solitary confinement. (Id. ¶ 41) He is also not aware of any rule or policy requiring this choice. (Id. ¶ 42). When Szemple asked why the medication was being stopped, Smyczek allegedly responded sarcastically, "Because I can," and that he was just "following orders," according to an un-cited NJDOC policy. Smyczek also purportedly said that he "had a great malpractice insurance policy. So sue me." Smyczek also

allegedly said that all the tests performed on Szemple and consults "mean nothing here." (Id. ¶ 45), and that his only recourse was "to file a Remedy Form." (Id. ¶ 50).

Szemple claims that around this time he wrote letters asking for assistance from Defendants Richard Cevasco (Director of Standards and Accreditation for UCHC), Thomas Farrell (Supervisor of Health Services Unit at NJDOC), Colleen Courter (Medical Ombudsman of EJSP), and Gary Lanigan (Commissioner of NJDOC). (Id. ¶ 51). The only person to respond was Defendant Courter, who had Szemple come to her office but did nothing to remedy the situation. (Id. ¶ 52).

Szemple was then "capriciously transferred" to New Jersey State Prison in Trenton, NJ on September 15, 2010. (Id. ¶ 52). On or about September 17, 2010, Szemple visited Defendant Dr. Abu Ashan (doctor employed by UCHC) in New Jersey State Prison, and Ashan said that Szemple's pain management was now conditional in New Jersey prisons per internal NJDOC memorandum #012, signed by Defendant Dr. Woodward (Director of Medical Services at NJDOC). Szemple would only be given his prescribed pain medication if he agreed to their "new conditions of solitary confinement in the infirmary," the Complaint alleges. Ashan apparently agreed that Szemple needed pain medication. (Id. ¶ 53). On September 22, 2010, neurologist Dr. Pizzi ordered MS Contin and Percocet for his pain, but this was denied as well. (Id. ¶ 54).

Szemple claims that his medical issues have led to depression, loss of appetite and lethargy, and at the time of the Complaint he had lost over 60 pounds in the last year. (Id. ¶ 43). He rates his constant pain as 8/9 out of 10, and he is often incapacitated. (Id. ¶¶ 46-47). Szemple thinks that this could also shorten his lifespan. (Id. ¶ 55).

Szemple filed the Complaint on October 10, 2010, pro se. On May 7, 2012, this Court dismissed Defendants NJDOC, Lanigan and Mee sua sponte from the action (ECF No. 9).

NJDOC was dismissed under Eleventh Amendment immunity and because it is not a "person" under 42 USC § 1983. Lanigan and Mee were dismissed because there was no evidence that they could be held accountable under supervisory liability. The Motion to Dismiss the medical malpractice claims was granted on January 23, 2015 (ECF No. 76). Plaintiff appealed the medical malpractice dismissal, but the Third Circuit denied the appeal for lack of jurisdiction on May 19, 2015. The present motion to dismiss was filed on December 10, 2012 (ECF No. 31). Szemple is now represented by counsel.

Plaintiff brings 17 causes of action based on federal and state law. There are now 16 claims without the medical malpractice claim (second cause of action). The remaining defendants are Rutgers, UCHC, Richard Cevasco, Ph.D., Thomas Farrell, Dr. Herbert Smyczek, Dr. Herschkowitz (Medical Director at EJSP), Dr. Woodward, Dr. Abu Ashan, and Colleen Courter.

**Legal Standard**:

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 556 U.S.

at 678-79; *see also Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Semerenko v. Cendant Corp*., 223 F.3d 165, 173 (3d Cir. 2000), *cert. denied, Forbes v. Semerenko*, 531 U.S. 1149, 121 S. Ct. 1091 (2001).

**Analysis**:

I.  **Statute of Limitations**

Defendants argue that any claims arising prior to October 21, 2008 should be dismissed because they are barred by the statute of limitations. New Jersey has a two-year statute of limitations for personal injury claims, and that time period applies to 42 U.S.C. § 1983 claims in New Jersey. *Cito v. Bridgewater Township Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989); N.J.S.A. 2A:14-2. The statute of limitations for any § 1983 claims would expire two years after Szemple knew or should have known of the injury. *Sameric Corp. of Del., Inc., v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998). The Complaint was filed on October 21, 2010, so anything that occurred before October 21, 2008 would be barred. However, many of Szemple's complaints appear to be ongoing. At oral argument it was indicated that he still has not received the requested mattress. Also, it appears that most of Plaintiffs claims concern the period after Rutgers entered into the contract with NJDOC, which was in or about 2009.

II.  **Eleventh Amendment Immunity**

Plaintiff brings claims under 42 U.S.C. § 1983. Defendants assert that these claims against Rutgers, UCHC, Director Cevasco, Director Woodward and Dr. Smyczek in their official capacities should be dismissed because they are barred by the Eleventh Amendment, and because Defendants are not "persons" who can be sued under § 1983.

First, Defendants say that any § 1983 claims are barred by the Eleventh Amendment. The Eleventh Amendment provides that: "the judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by citizens of any foreign state." The Amendment does not permit federal jurisdiction over a state unless the state consents to a suit or the Fourteenth Amendment allows it. *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 99 (1984); *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). The doctrine of sovereign immunity also applies to state agencies and state officers acting on behalf of the state. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997).

Defendants claim that Rutgers, UCHC, Director Cevasco, Dr. Woodward, and Dr. Smyczek, in their official capacities, should be given Eleventh Amendment immunity since they have not consented to suit in District Court.

It has been held that Rutgers is not entitled to Eleventh Amendment immunity in certain situations. *See Kovats v. Rutgers, State Univ.*, 822 F.2d 1303, 1312 (3d Cir. 1987). This Circuit has also held that institutions and physicians under contract to provide medical services to inmates at a state prison act "under color of state law" for § 1983 purposes. *Vogt v. Rutgers Univ. Health Department for the Department of Corrections*, 2016 WL 356078, at *3, n. 4 (D.N.J. Jan. 29, 2016), citing *Walker v. Horn*, 385 F.3d 321, 332 (3d Cir. 2004). Since analyzing "[w]hether a public university is entitled to Eleventh Amendment immunity is a fact-intensive review that calls for individualized determinations," the Court will not dismiss Rutgers and UCHC on Eleventh Amendment grounds at this stage. *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 546 (3d Cir. 2007).

Smyczek is Medical Director at EJSP; and Woodward is Director of Medical Services at the New Jersey Department of Corrections. In their official capacities, they would be entitled to immunity. Plaintiff claims that he is not suing these Defendants in their official capacities. State officials can be sued in their personal capacities. See *Melo v. Hafer,* 912 F.2d 628, 637 (3d Cir. 1990) (rejecting argument that a "state official can be sued in her personal capacity only if the allegedly unconstitutional actions were not taken in her official capacity"). The Complaint does make claims against Defendants in their "individual and official capacities." Whether these Plaintiffs can be sued in their personal capacities is examined below.

### III.  New Jersey Civil Rights Act

Defendants also contend that the New Jersey Civil Rights ("NJCRA") claims should be dismissed. The Thirteenth Cause of Action in the complaint asserts a claim under the NJCRA against Rutgers, UCHC, Cevasco, Farrell, Herschkowitz, Ashan, Courter, Woodward, and Smyczek. The NJCRA was based on 42 U.S.C. § 1983 and creates a private right of action for civil rights claims asserting a deprivation "by a person acting under color of law," of "any substantive rights, privileges or immunities secured by the Constitution or laws of the United States." N.J.S.A. 10:6-1 to -2; *see also Williams v. New Jersey Div. of State Police*, 2012 WL 1900602 (D.N.J. 2012).

The Third Circuit has declared that the NJCRA should be interpreted similarly to § 1983 in regard to the definition of "person." According to the court, "New Jersey has provided its own definition of the word 'person,' and that definition does not include the State or defendants which are the functional equivalent of the State." *Didiano v. Balicki*, 488 Fed.Appx. 634, 638 (3d Cir. 2012). The same affirmative defenses and immunities apply. *See Ramos v. Flowers*, 429 N.J. Super. 13, (App. Div. 2012).

**IV. § 1983 Claims and Respondeat Superior**

The Eighth and Tenth Causes of Action seek to hold all Defendants liable for the development, implementation and supervision of policies and procedures that deprived Plaintiff of his rights. Defendants call for the dismissal of Counts 8 and 10 because the § 1983 claims are based on an impermissible theory of respondeat superior.

To establish supervisory liability, a plaintiff must show: "(1) the existence of a policy or practice that created an unreasonable risk of an Eighth Amendment violation; (2) the supervisor's awareness of the creation of the risk; (3) the supervisor's indifference to the risk; and (4) that the plaintiff's injury resulted from this policy or practice." *Thorpe v. Little*, 804 F. Supp. 2d 174, 184 (D. Del. 2011), citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). Put another way, supervisory liability "may attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or if the supervisor's actions and inactions were 'the moving force' behind the harm suffered by the plaintiff." *Jackson v. Taylor*, 2006 WL 2347429, at *2 (D. Del. 2006).

A defendant could be held liable for personal involvement, but for there to be personal involvement, "[a]llegations of participation or actual knowledge and acquiescence…must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

As a general rule, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. *See Iqbal*, 129 S.Ct. at 1948; *Monell v. New York City Dept. Of Social Servs.*, 436 U.S. 658, 691 (1978). In *Iqbal*, the Supreme Court held that "[b]ecause vicarious or supervisor liability is inapplicable to…§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S.Ct. at 1948. Thus, each

government official is liable only for his or her own conduct. The Court rejected the contention that supervisor liability can be imposed where the official had only "knowledge" or "acquiesced" in their subordinates conduct. See *id*., 129 S.Ct. at 1949.

It is not clear why Defendant Ashan is being sued under supervisory authority. Ashan was a UCHC doctor who told Szemple that his pain medication would only be permitted in the infirmary due to the new policy that he did not create. The same holds for Defendant Smyczek. Although there may be enough facts against Smyczek to survive a motion to dismiss on a personal § 1983 claim against him, such claims are not made, and supervisory authority does not appear to be the appropriate path. The only reference to Dr. Cevasco in the Complaint is when Szemple mailed him a letter asking for assistance, and never received a response. However, there is nothing suggesting that he implemented the policies, or that his actions or inactions were "the moving force behind the harm suffered by the plaintiff." *Jackson*, 2006 WL 2347429, at *2 (D. Del. 2006). Simply making allegations that Szemple sent a letter asking for help but did not receive a response does not meet this standard of "appropriate particularity." Similarly, the Complaint alleges that Defendant Courter spoke with Szemple about his issues, but there is no indication that she implemented policies or was the moving force behind the harm. Therefore, the § 1983 claims against Ashan, Smyczek, Cevasco, and Courter are dismissed without prejudice.

Regarding Dr. Woodward, the Complaint alleges that he signed the internal memorandum stating that pain medication could only be prescribed if the patient agreed to their "new conditions of solitary confinement in the infirmary." Therefore, Dr. Woodward's policy may have resulted in the constitutional harm. The motion to dismiss counts 8 and 10 is denied against Woodward.

## V.  Deliberate Indifference

In the Fourth Cause of Action, Plaintiff makes claims against Defendants Rutgers and UCHC for deliberate indifference to his medical needs, presumably under 42 USC § 1983. These claims would also apply to the NJCRA claims in Count 13, however, Szemple makes the state claims against all Defendants. The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976); *Afdahl v. Cancellieri*, 463 Fed.Appx. 104, 107 (3d Cir. 2012). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *See Estelle*, 429 U.S. at 106; *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

A serious medical need is one that a doctor says requires treatment or that is so clear that a layperson would realize it needs a doctor's attention. *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). The medical need is considered serious if delay or denial of care causes unnecessary and wanton infliction of pain or life-long handicap or permanent loss. *Townsend v. Holt*, 2013 WL 4459023, *5 (M.D. Pa. 2013). The evidence here is sufficient to establish this serious medical need. Plaintiff describes substantial constant pain, around 8/9 out of 10. He suffers from numerous ailments, including his back, knee, and arms. He has had to undergo surgery on his arm and doctors have allegedly said that he should have a knee replacement.

Deliberate indifference can be found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or

recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). The "refusal to administer pain medication contrary to a surgeon's orders" may constitute deliberate indifference. *Peterson v. Knauer*, 2008 WL 509207, *3 (E.D. Pa. 2008).

The Third Circuit confronted the issue in *Spruill v. Gillis*, 372 F. 3d 218, 236 (3d Cir. 2004):

> If a prisoner is under the care of medical experts...a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison…Moreover, under such a regime, non-medical officials could even have a perverse incentive not to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability.

*Id*.

That Court went on to hold that "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official" cannot be liable for deliberate indifference. *Id.*

According to Defendants, this is a case where Plaintiff disagrees with the decisions made by his medical professionals, and such allegations should sound in negligence and not deliberate indifference. *See Thomas v. Dragovich*, 142 Fed. Appx. 33, 36 (2005) ("a deliberate indifference claim requires that a prisoner demonstrate 'more than negligence'"); *see also Maldonado v. Terhune,* 28 F. Supp. 2d 284, 289 (D.N.J. 1998) ("a mere disagreement with the form of treatment does not rise to a constitutional violation.").

However, this is not merely a case where the doctors are failing to appropriately treat Plaintiff. The Complaint is alleging that he was actually diagnosed by several medical professionals as requiring care, but Defendants have not provided him with that care. While Plaintiff has clearly received medical care and has had operations, the allegations state that Defendants are not adhering to the doctors' orders by providing him with pain medication and a

proper bed. Also, delay by Defendants in responding to his medical needs may have resulted in these now permanent ailments. The Motion to Dismiss the § 1983 medical indifference claim is denied as to Rutgers and UCHC. The Motion to Dismiss the claims against the Individual Defendants under the NJCRA is denied as to Cevasco, Courter, Smychek, and Woodward. There are no allegations that Ashan did anything improper and these counts are dismissed as to him.

**VI. Conspiracy claims under 42 USC § 1985 and § 1986**

Plaintiff's Eleventh and Seventeenth Causes of Action are claims of conspiracy under 42 U.S.C. § 1986 and § 1985, respectively.

To make out a conspiracy claim under 42 USC § 1985(3), Plaintiff must "prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Brotherhood of Carpenters & Joiners Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983). The conspiracy claim must be plead with specificity. *See Church of Human Potential, Inc. v. Vorsky*, 636 F. Supp. 93, 95 (D.N.J. 1986).

42 U.S.C. § 1986 states:

> Every person, who having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be omitted, shall be liable to the party injured.

Defendants assert that the Complaint is devoid of any facts indicating such a conspiracy. Plaintiff, in response, points to numerous paragraphs in the Complaint that, when read together, suggest a conspiracy. Paragraph 25 of the Complaint reads: "Szemple is being housed in these

conditions as a 'punishment' for his complaints and current litigation, in an apparent attempt to intimidate him into silence." Paragraph 26 states: "Lt. Lapenta…approved Szemple's request, in writing, for a cell change with better sleeping conditions, only to be told later that defendant UMDNJ/UCHC, via defendant Smyczek, denied the move." Paragraph 29 notes that Defendants refused to perform the operations in a timely matter resulting in loss of full usage of Szemple's limbs and back. Paragraph 35 states that since UMDNJ/UCHC took over the medical services from NJDOC, a medical specialist has not seen Szemple, and subsequently his other knee had to be replaced. Paragraph 40 notes that Defendants cut off all his pain medication in August 2010 for no apparent reason, which was prescribed by Dr. Sackstein. Paragraph 40 and 42 also say that Szemple was forced to choose between the pain medication or staying permanently in the infirmary, and he was not aware of any rule to this effect. Plaintiff cites to several other portions of his Complaint, including Paragraph 44 stating that, "[w]hen Szemple asked why the medication was being ceased, defendant Smyczek answered sarcastically, 'Because I can,' and that he was just 'following orders' according to NJDOC policy (which he could not cite)".

Nevertheless, these facts are not enough to establish a conspiracy. It is true that "direct evidence of an express agreement is not required." Also, a § 1985 conspiracy may also be proved through circumstantial evidence, and a claim may be maintained where the jury could infer from the circumstances that the Defendants had a 'meeting of the minds.'" *Kisner v. DeFasio*, 2009 WL 4891837, *8 (W.D. Pa. 2009).

Plaintiff's claim that his treatment was "punishment" for his complaints and litigation is conclusory. In §1983 cases, federal courts often reject vague and conclusory conspiracy claims, and require particular and specific allegations of conspiracy. *See Freger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) (explaining that § 1983 conspiracy pleading standards are "relatively strict,"

requiring certain particularity); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (stating, "complaints containing only conclusory, vague, or general allegations that defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct"). There is no evidence, direct or circumstantial, of an agreement to satisfy the specificity standards. Counts 11 and 17 are dismissed.

## VII.  Breach of Contract

Defendants seeks dismissal of the First Cause of Action for breach of contract against Rutgers and UCHC on the grounds that Plaintiff lacks standing to bring the claim because he is not an intended third-party beneficiary.

Plaintiff asserts that Defendants breached the contract between the New Jersey Department of Corrections and Rutgers for providing medical care to New Jersey state inmates. Essentially, Plaintiff is saying that he is a third-party beneficiary under that contract. New Jersey law allows third-party beneficiaries to sue for breach of contract even when there is no privity. N.J.S.A. 2A:15-2; *Rieder Communities, Inc. v. Township of North Brunswick*, 227 N.J. Super. 214, 221-222 (App. Div. 1988). When deciding whether a party is a third-party beneficiary, the court should look at "whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts…" *Rieder Communities, Inc.*, 227 N.J. Super. at 222.

Defendants explain that the Complaint does not reveal any contractual language suggesting that Plaintiff is an intended third-party beneficiary. *See Washington v. Correctional Medical Services*, 2006 WL 1210522, *5 (Finding that "[p]laintiff has not provided any evidence to support an argument that the contract contains language that would make him an intended

beneficiary with standing to sue.") In response, Plaintiff says it is obvious that he is a third-party beneficiary because the contract was meant to provide medical services to inmates, and he is an inmate complaining of poor medical services. Additionally, Plaintiff does not even have access to the contract to argue his point because there has not been discovery.

However, other courts in this district presented with this issue have agreed with Defendants' position:

> Plaintiff has no standing to sue for such violation: this is so even if Plaintiff deems or designates himself as a third-party beneficiary of this contract. *See Brown v. Sadowski*, 2009 U.S. Dist. LEXIS 62718, at *13, 2009 WL 2182604 (D.N.J. July 20, 2009) ("Plaintiff has no standing to seek enforcement of any duties his prison officials might owe to the state, since Plaintiff is not an expressly designated third party beneficiary of the contracts, if any, that the state might have with the prison officials") (relying on *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 126 S.Ct. 1991, 164 L.Ed.2d 720 (2006)); *accord Glenn v. Hayman*, 2007 U.S. Dist. LEXIS 20092, at *34, 2007 WL 894213 (D.N.J. Mar.20, 2007) (analogously relying on *Anza* for the observation that, "[s]ince the State of New Jersey was the allegedly defrauded party (and in no way designated Plaintiffs to litigate the alleged RICO claim on behalf of the State), Plaintiffs cannot bring this claim").

*Maqbool v. Univeristy Hosp. of Medicine & Dentistry of New Jersey*, 2012 WL 2374689, at *4 (D.N.J. June 13, 2012) (quoting *Parker v. Gateway Nu–Way Found.*, 2010 U.S. Dist. LEXIS 115116, at *14–15, 2010 WL 4366144 (D.N.J. Oct. 26, 2010)). *See also Green v. Corzine*, 2011 WL 735745, at *4 (D.N.J. Feb. 22, 2011); *Edwards v. Corr. Medical Serv.*, 2010 WL 920020, at *4 (D.N.J. Mar. 9, 2010). This Court sees no reason to depart from the sound decisions made by the other courts in this district on this issue and will dismiss Plaintiff's breach of contract claim.

## VIII. State Tort Law Claims

All state law tort claims should be dismissed, according to Defendants, because Plaintiff did not file a Notice of Tort claim. The Third and Ninth Causes of Action are for negligence; the Twelfth Cause of Action is for intentional infliction of emotional stress; and the Sixteenth Cause

of Action is for fraud. These claims are controlled by the New Jersey Tort Claims Act ("NJTCA"). Plaintiff did not file a Notice of Tort claim as the NJTCA requires. N.J.S.A. 59:1-1 to 59:12-3. The Third Cause of Action alleges negligence against Rutgers/UCHC; the Ninth Cause of Action alleges negligent supervision against Rutgers/UCHC, Cevasco, Farrell, Smyczek, Herschkowitz, Woodward, Ashan, and Courter.

      N.J.S.A. 59:8-3 states that "no action shall be brought against a public entity or public employee under [the NJTCA] unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." These notice requirements "are a jurisdictional precondition to filing suit." *Ptaszynski v. Uwaneme*, 371 N.J. Super. 333, 343 (App. Div. 2004) There can be no recovery against public employees and public entities without following the notice requirements. *Velez v. City of Jersey City*, 180 N.J. 284, 290-91 (2004); N.J.S.A. 59:8-8. The notice of claim must be filed with the public entity within 90 days of accrual of the cause of action. The Act also states, "[n]othing in this [A]ct shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct." *N.J.S.A.* 59:3–14a. Nevertheless, "Actual fraud" and "willful misconduct" are still subject to this notice requirement. *See Velez*, 180 N.J. at 293-94 (2004).

      Also, the definition of "public entity" under the NJTCA is "specifically intended to include such entities as ... Rutgers the State University." Comment to N.J.S.A. 59:1–3; *U.S. v. Brow*, 2009 WL 4746344, at *4 (E.D.N.Y. 2009).

      Plaintiff has not provided evidence suggesting that he met the requirements. The most recent allegation in the Complaint arose on September 22, 2010. There is no evidence that Plaintiff filed any Notice of Tort Claim by December 21, 2010. Failure to satisfy these

procedures acts as an absolute bar to recovery. Since Plaintiff has not followed the procedures, counts 3, 9, 12, and 16 are dismissed with prejudice.

The Fourteenth Cause of Action makes a claim in "Federal Constitutional Tort," and the Fifteenth Cause of Action makes a claim in "State Constitutional Tort." These claims are also dismissed insofar as they assert state tort law claims or are duplicative.

## IX.  No Independent Causes of Action

Defendants claim that the Sixth and Seventh Causes of Action should be dismissed because they do not provide for independent causes of action. Plaintiff's Sixth claim is for breach of N.J.S.A. 30:4-91.1, et seq, and the Seventh claim is for breach of N.J.A.C. 10A:16. The former relates to "the power to transfer inmates from one institution to another," which does not pertain to the situation here. *Gibson v. Lynch*, 652 F.2d 348, 354 (3d Cir. 1981). In addition, 10A:16 does not provide for a separate private cause of action. *Maqbool*, 2012 WL 2374689, *4. Both claims are dismissed.

Finally, the Court will dismiss the Fifth Cause of Action for Punitive Damages. "Punitive damages are a remedy incidental to [a] cause of action, not a substantive cause of action in and of themselves." *Hassoun v. Cimmino*, 126 F. Supp. 2d 353, 372 (D.N.J. 2000) (citation omitted).

### ORDER

This matter having come before the Court on a Motion to Dismiss by Defendants [ECF No. 31]; and the Court having considered the submissions of the parties, having heard oral argument, for the reasons set forth on the record, and for good cause shown,

It is, on this 29th day of March, 2016, hereby

ORDERED that Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART; it is further

ORDERED that the Motion is GRANTED in that the following counts are dismissed as to all Defendants: 1, 2, 3, 5, 6, 7, 9, 11, 12, 14, 15, 16, and 17; it is further

ORDERED that the Motion is DENIED as follows:

>Count 4 remains against Rutgers and UCHC,

>Counts 8 and 10 remain against Woodward, and

>Count 13 remains against Woodward, Cevasco, Courter, Smyczek; it is further

ORDERED that Ashan is dismissed from this action; and it is further

ORDERED that Plaintiff shall have thirty (30) days from the filing of this Order to amend the Complaint.

  _s/Peter G. Sheridan_
  PETER G. SHERIDAN, U.S.D.J.

March 29, 2016