IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CRAIG FRANCIS SZEMPLE,<br><br>Plaintiff,<br><br>v.<br><br>RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY, et al.,<br><br>Defendants. | HONORABLE PETER G. SHERIDAN<br><br>Civil Action<br>No. 10-5445 (PGS-DEA)<br><br>**OPINION** |

APPEARANCES:

Craig Francis Szemple, Plaintiff Pro Se
Prison 263906
SBI #729710a
New Jersey State Prison
Po Box 861
Trenton, NJ 08625

Gurbir S. Grewal, Attorney General of New Jersey
Michael Ezra Vomacka, DAG
New Jersey Department of the Attorney General
Richard J. Hughes Justice Complex
25 Market Street
PO Box 112
Trenton, NJ 08625
Attorneys for Defendant, Dr. Woodward

**SHERIDAN, District Judge:**

**I. INTRODUCTION**

This matter comes before the Court on Plaintiff Craig Francis Szemple's Motion for Summary Judgment. (ECF No. 131) and Defendant Dr. Woodward's Motion for Summary Judgment (ECF No. 143). Dr. Woodward and the Rutgers defendants, collectively consisting of

Richard Cervasco, Colleen Courter, Rutgers, the State University of New Jersey, Herbert Smyczek, oppose Plaintiff's motion. (ECF Nos. 133, 134). Plaintiff did not file written opposition to Dr. Woodward's motion. For the reasons set forth below, the Court will deny Plaintiff's motion and grant Dr. Woodward's motion.

## II. BACKGROUND

Plaintiff has been incarcerated in the New Jersey Department of Corrections ("NJDOC") since 1994. He suffers numerous medical problems and states that his medical conditions have deteriorated to the point where he suffers extreme pain and loss of spine movement, among other issues. (Compl. ¶¶ 16-17).

According to the complaint, Plaintiff had an MRI on both knees and his lumbar spine at St. Francis Hospital on November 27, 2006. The MRI showed severe degenerative changes in both knees. (*Id.* ¶ 18). On December 2, 2006, Dr. Sackstein, a pain management doctor, ordered a flat-sheeted bed for Plaintiff, called for an increase in Plaintiff's pain medications, and prescribed hot therapeutic baths to relieve Plaintiff's back pain. (*Id.* ¶ 19). Plaintiff saw a neurologist, Dr. Tahmoush, on December 3, 2006. (*Id.* ¶ 21). Dr. Tahmoush said that Plaintiff's overall health was in severe decline. The deterioration of Plaintiff's physical health caused Plaintiff to become depressed and to lose sleep. *(Id.)*. Subsequent MRIs performed by Drs. Pizzi and Tahmoush indicated that Plaintiff has degenerative disk disease and bulging disks of the lumbar spine, stenosis, advanced arthritis in the spine, complex regional pain syndrome, and other problems. (*Id.* ¶ 22). Plaintiff reports that doctors have said his back problems stem from the bed and mattress assigned to him by NJDOC per EJSP Administrator Donald Mee's instructions. (*Id.* ¶ 23).

Plaintiff alleges Mee, UMDNJ (now "Rutgers"), UCHC ("University Correctional Healthcare")[1] and NJDOC have refused to comply with Dr. Sackstein's directions to provide Plaintiff with three mattresses. (*Id.* ¶ 24). Plaintiff must instead sleep on a 10-year old mattress in his 5' X 12' cell. (*Id.*) Plaintiff alleges that he was placed in these conditions as "punishment" for his complaints and current litigation. (*Id.* ¶ 25).

Lt. Laptenta, an area supervisor at EJSP, approved Plaintiff's request for a cell improvement in writing, but allegedly later said that UMDNJ/UCHC, through EJSP's Medical Director, Dr. Herbert Smyczek, Ph.D., denied the move. (*Id.* ¶ 26). Dr. Miller, an orthopedic surgeon, saw Plaintiff on December 14, 2006 and said that both knees had to be replaced. Plaintiff alleges that an orthopedic group had recommended knee replacement for his left knee several times over a four-year period, but Defendants had refused the operation, allegedly leading to the worsening condition of his right knee. (*Id.* ¶ 30).

On December 19, 2006, cardiologist Dr. DeStefano said that the decline in Plaintiff's overall health was leading to a worsening in his heart condition, and could possibly lead to a heart attack. (*Id.* ¶ 33).

In or about 2009, Rutgers/UCHC contracted with NJDOC to act as the exclusive provider of medical care to the New Jersey prison inmate population. (*Id.* ¶ 34). Plaintiff alleged that he has not seen a medical specialist since Rutgers took over. (*Id.* ¶ 35). He claims Defendants have failed to treat the conditions in his arms (nerve palsy, carpal tunnel, and more) properly, so that surgery had to be performed in order to restore usage and alleviate pain. (*Id.* ¶¶ 37-38). However, a neurologist said that the procedure did little to improve Plaintiff's condition due to the delay in

---

[1] Plaintiff refers to UMDNJ (Rutgers) and UCHC as one entity (UMDNJ/UCHC) throughout the Complaint.

the treatment, and that Plaintiff's condition would continue to worsen in his living environment. (*Id.* ¶ 38).

Rutgers initially continued Plaintiff's cocktail of pain medication drugs,[2] but told Plaintiff they would be discontinuing the mediation in August 2010. (*Id.* ¶ 40). Plaintiff was "told that he must choose between getting pain medication and staying permanently in the infirmary, or staying in general population and be taken off all pain medication." (*Id.*). When Plaintiff asked why the medication was being stopped, Dr. Smyczek allegedly responded sarcastically, "Because I can," and that he was just "following orders," although he was not able to cite the relevant NJDOC policy. Dr. Smyczek also purportedly said that he "had a great malpractice insurance policy. So sue me." Dr. Smyczek also allegedly said that all the tests performed on Plaintiff and consults "mean nothing here." (*Id.* ¶ 45), and that his only recourse was "to file a Remedy Form." (*Id.* ¶ 50).

Plaintiff claims that around this time he wrote letters asking for assistance from Defendants UCHC Director of Standards and Accreditation Richard Cevasco, NJDOC Supervisor of Health Services Unit Thomas Farrell, EJSP Medical Ombudsman Colleen Courter, and NJDOC Commissioner Gary Lanigan. (*Id.* ¶ 51). Only Defendant Courter responded. She had Plaintiff come to her office, but did nothing to remedy the situation. (*Id.* ¶ 52). Plaintiff was then "capriciously transferred" to New Jersey State Prison in Trenton, NJ on September 15, 2010. (*Id.* ¶ 52).

---

[2] Originally Demerol 100mg three times a day, Fentanyl pain patch, 100 mcg every 48 hours, and Lidoderm patches three times a day. (Compl. ¶ 48). Plaintiff alleges this was changed to Vicodin HD three times a day and morphine sulphate, 30 MG (MS Contin), seven times a day in September 2009 after Plaintiff nearly bled to death from a dental/medical incident "due to defendants' actions, and the pain meds were changed to save money for defendants." (*Id.* ¶ 49).

4

On or about September 17, 2010, Plaintiff visited Defendant Dr. Abu Ashan, an employee of UCHC, in New Jersey State Prison. Dr. Ashan said that Plaintiff's pain management was now conditional in New Jersey prisons per internal NJDOC memorandum #012, signed by Defendant NJDOC Director of Medical Services Dr. Woodward. The Complaint alleges that Plaintiff would only be given his prescribed pain medication if he agreed to their "new conditions of solitary confinement in the infirmary." (*Id.* ¶ 53). Dr. Ashan apparently agreed that Plaintiff needed pain medication but would not provide it unless Plaintiff agreed to the terms of the NJDOC policy. (*Id.* ¶). On September 22, 2010, neurologist Dr. Pizzi ordered MS Contin and Percocet for Plaintiff's pain, but Defendants would not provide this medication. (*Id.* ¶ 54).

Plaintiff filed the Complaint pro se on October 10, 2010. On May 7, 2012, this Court dismissed Defendants NJDOC, Lanigan and Mee sua sponte from the action. (ECF No. 9). Plaintiff applied for pro bono counsel several times after the filing of the complaint, and Magistrate Judge Arpert granted the request on September 4, 2013. (ECF No. 43). On July 14, 2014, counsel filed a letter with the Court indicating he could not raise any good faith defenses to a pending motion to dismiss and that Plaintiff was dissatisfied with his representation. (ECF No. 58). Counsel moved to withdraw, which Plaintiff initially consented to but later opposed. (ECF Nos. 59, 63).

Defendants filed another motion to dismiss on December 4, 2014. (ECF No. 66). On January 23, 2015, the Court granted the motion to dismiss the medical malpractice claims and granted counsel's motion to withdraw after oral argument. (ECF Nos. 76, 78). The Court thereafter appointed counsel for the limited purpose of responding to another pending motion to dismiss. (ECF No. 81). Plaintiff appealed the order granting the motion to dismiss, but the Third Circuit denied the appeal for lack of jurisdiction on May 19, 2015. (ECF 87).

On March 29, 2016, the Court granted in part another motion to dismiss. (ECF No. 99). The Court dismissed Counts 1, 2, 3, 5, 6, 7, 9, 11, 12, 14, 15, 16, and 17 as to all defendants and permitted Count 4 (deliberate indifference) to proceed against Rutgers and UCHC, Counts 8 and 10 (supervisory liability) to remain against Woodward, and Count 13 (state constitutional claims) to remain against Woodward, Cevasco, Courter, and Smyczek. *See Szemple v. Rutgers*, No. 10-5445, 2016 WL 1228842 (D.N.J. Mar. 29, 2016). The Court granted Plaintiff leave to file an amended complaint within 30 days.

Counsel's representation terminated on March 29, 2016 after the motion to dismiss was granted in part. (ECF No. 99). Since that time, Plaintiff has written to the Court on several occasions inquiring as to the status of pro bono counsel. (ECF Nos. 100, 104, 110, 111, 112, 114). The Court conducted a telephone conference on March 30, 2017 and denied all requests for pro bono counsel. (ECF No 117). It vacated the appointment order and directed Plaintiff to proceed pro se as "[d]espite the Clerk's Office continual attempt to find new counsel, all counsel contacted have decline to represent Mr. Szemple." (ECF No. 118). The Court gave Plaintiff until May 15, 2017 to file an amended complaint. (*Id.*). Plaintiff continued to write the Court asking for counsel. (ECF Nos. 119, 129). The Court denied the requests. (ECF No. 130).

Plaintiff declined to file an amended complaint, instead filing this summary judgment motion on August 9, 2017. (ECF No. 131). Dr. Woodward and the Rutgers defendants oppose the motion. (ECF Nos. 133, 134). Dr. Woodward filed a motion for summary judgment on January 26, 2018. (ECF No. 143). Plaintiff did not file any written opposition.

The Court conducted oral argument via telephone on March 9, 2018. The Court conducted oral argument on March 9, 2018, at which time Dr. Woodward and Plaintiff appeared telephonically.[3] The matter is now ripe for disposition.

### III. STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, "[s]ummary judgment is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.' In making that determination, a court must view the evidence 'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). A "genuine" dispute of "material" fact exists where a reasonable jury's review of the evidence could result in "a verdict for the non-moving party" or where such fact might otherwise affect the disposition of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130–31 (3d Cir. 1995). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247–48. If a court determines, "after drawing all inferences in favor of [the non-moving

---

[3] The Court granted the Rutgers defendants' request to waive their appearance at oral argument. (ECF No. 147).

7

party], and making all credibility determinations in his favor that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 F. App'x 222, 227 (3d Cir. 2007). Properly applied, Rule 56 will "isolate and dispose of factually unsupported claims or defenses" before those issues come to trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

## IV. DISCUSSION

### A. Plaintiff's Motion for Summary Judgment (ECF No. 131).

As the party with the burden of proof at trial, Plaintiff's motion for summary judgment "must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991)). Even giving Plaintiff the benefit of the liberal pleading standard for pro se plaintiffs, he has failed to meet this high standard.

Plaintiff's motion papers do not identify on what claims he seeks summary judgment, the defendants against whom he seeks judgment, or what evidence supports his argument that he is entitled to judgment as a matter of law. The Court gave Plaintiff an opportunity to expand on his position at oral argument, and Plaintiff elected to argue that the Court had previously denied Defendants' motions to dismiss. This is insufficient to prove that he is entitled to judgment as a matter of law. Plaintiff's motion for summary judgment is denied.

### B. Dr. Woodward's Motion for Summary Judgment (ECF No. 143)

Dr. Woodward moves for judgment on the remainder of Plaintiff's claims against him: a state constitutional claim of denial of medical care (Count 13) and two counts of supervisory

8

liability (Counts 8 and 10). Plaintiff did not file any written opposition to the motion and did not take the opportunity to provide substantive opposition at oral argument.

*1. Denial of Medical Care*

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.[4] *See Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976); *Afdahl v. Cancellieri*, 463 F. App'x 104, 107 (3d Cir. 2012). "To prove this claim, 'evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need.'" *Parkell v. Danberg*, 833 F.3d 313, 337 (3d Cir. 2016) (quoting *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003)).

A serious medical need is one that a doctor says requires treatment or that is so clear that a layperson would realize it needs a doctor's attention. *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). "The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment. . . . [I]f 'unnecessary and wanton infliction of pain,' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Ibid.* (quoting *Estelle*, 429 U.S. at 103, 105).

"'Allegations of medical malpractice are not sufficient to establish a Constitutional violation,' nor is '[m]ere disagreement as to the proper medical treatment.'" *Parkell*, 833 F.3d at 337 (quoting *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004)) (alteration in original). "In the Eighth Amendment context, 'deliberate indifference' is 'a subjective standard of liability

---

[4] "Generally, in actions alleging a violation of a state civil rights act, the statutory civil rights act applicable to the particular state is construed the same as the federal civil rights statute, 42 U.S.C.A. § 1983." 152 Am. Jur. Trials 141 (Originally published in 2017).

9

consistent with recklessness as that term is defined in criminal law.' A prison official is deliberately indifferent if the official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Id.* at 335 (quoting *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000) (en banc); *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 229 (3d Cir. 2015)).

As Plaintiff has not provided evidence contradicting Dr. Woodward's Statement of Facts ("SOF") (ECF No. 143-6) despite being given many opportunities to do so, the Court considers them undisputed for purposes of this motion. Fed. R. Civ. P. 56(e)(2). Dr. Woodward did not personally treat, examine, or see Plaintiff in a professional capacity. (SOF ¶¶ 6-8). Dr. Woodward has never spoken with Plaintiff and does not have any personal knowledge of Plaintiff's medical condition, serious or otherwise. (*Id.* ¶¶ 10-11). He is not aware of the persons who treated Plaintiff, nor does he have knowledge of any delay, denial, or refusal to provide Plaintiff with medical treatment. (*Id.* ¶¶ 9, 12).

Plaintiff has not provided anything establishing that Dr. Woodward was deliberately indifferent to a serious medical need. The allegations made in Plaintiff's complaint are insufficient to create a jury issue. *See Berckeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) ("[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."). *See also Stone v. Sec'y United States Dep't of Homeland Sec.*, 705 F. App'x 76, 78 (3d Cir. 2017) ("[T]he non-moving party may not rest upon the mere allegations or denials of his pleadings[.]" (internal quotation marks omitted)). The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Plaintiff has failed to counter Dr. Woodward's evidence with any evidence of his own; therefore, there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)* ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."). Dr. Woodward is entitled to summary judgment.

*2. Supervisory Liability*

Dr. Woodward argues he should be granted summary judgment on Counts 8 and 10, Plaintiff's supervisory liability claims, because "Plaintiff has failed to adduce facts establishing a practice or policy that created an unreasonable risk of a violation of the Eighth Amendment, and because Plaintiff has not adduced facts showing Defendant Woodward was aware of such a risk." (ECF No. 143-1 at 19-20).

"Courts recognize that liability under § 1983 may be imposed on an official with final policymaking authority if that official establishes an unconstitutional policy that, when implemented, injures a plaintiff." *Chavarriaga*, 806 F.3d at 223 (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)). Here, "plaintiff must demonstrate: (1) the existence of a policy or practice that created an unreasonable risk of an Eighth Amendment violation; (2) the supervisor's awareness of the creation of the risk; (3) the supervisor's indifference to the risk; and (4) that the plaintiff's injury resulted from this policy or practice." *Estate of Chance ex rel. Humphreys v. First Corr. Med., Inc.*, 329 F. App'x 340, 343 (3d Cir. 2009). "Normally, an unreasonable risk in a supervisory liability case will be shown by evidence that such harm has in fact occurred on numerous occasions. Similarly, deliberate indifference to a known risk will ordinarily be demonstrated by evidence that the supervisory official failed to respond

appropriately in the face of an awareness of a pattern of such injuries." *Sample*, 885 F.2d at 1118.

Plaintiff challenges the policy of requiring inmates to remain in "solitary confinement" in the infirmary in order to receive pain medication. (Compl. ¶ 53). Dr. Woodward argues that Plaintiff cannot produce any admissible evidence showing that Dr. Woodward was aware of a risk of a constitutional violation and was deliberately indifferent to that risk. *See* Fed. R. Civ. P. 56(c)(1)(B). *See also Siegel Transfer, Inc. v. Carrier Exp., Inc.*, 54 F.3d 1125, 1131 (3d Cir. 1995) ("[W]hen the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the nonmoving party has not offered evidence sufficient to establish the existence of an element essential to its case."). Plaintiff has not produced any evidence in opposition to the summary judgment motion in writing or at oral argument sufficient to create a genuine issue of material fact for trial. Dr. Woodward is therefore entitled to summary judgment.

*3. Qualified Immunity*

Alternatively, Dr. Woodward is entitled to qualified immunity on the supervisory liability claims. "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012). "'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *Ibid.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "In other words, existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'" *Ibid.* (quoting *al-Kidd*, 563 U.S. at 741). "To be clearly established, a legal principle

must have a sufficiently clear foundation in then-existing precedent. It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Ibid.*

Dr. Woodward does not explicitly confirm or deny the existence of a medication policy, but to the extent he does discuss a policy he refers to it as "a requirement that [Plaintiff] stay in the infirmary for the administration of his pain medication." (ECF No. 143-1 at 21). Dr. Woodward also does not explicitly confirm or deny he authored said policy. The Court interprets the parties' recitations as two different policies: the policy as stated by Plaintiff would confine inmates to the infirmary for the duration of their treatment with pain medication, whereas the policy as stated by Dr. Woodward would require inmates to take their medication in the infirmary but would permit them to leave afterwards. The existence and scope of a medication policy is a factual dispute. For qualified immunity purposes, the Court adopts the interpretation of the policy most favorable to Plaintiff. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) ("[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment.").

Presuming the policy requires prisoners to remain in the infirmary for the entire course of treatment with pain medication, the right not to be confined to a prison infirmary for the duration of medical treatment was not clearly established in 2010. *See, e.g., Haralson v. Campuzano*, 356 F. App'x 692, 696-97 (5th Cir. 2009) (finding no Eighth Amendment violation when prisoner was confined to the infirmary wing for duration of medical treatment); *Ford v. Frame*, No. 92-7049, 1994 WL 323750, at *8 (E.D. Pa. June 28, 1994) ("[T]he prison's valid concern for maintaining security and order justifies the separation of inmates confined to a wheelchair from

13

the general prison population and the housing of such inmates in the infirmary or maximum security and does not violate the inmate's constitutional rights."). *See also Fantone v. Herbik*, 528 F. App'x 123, 126 (3d Cir. 2013) (holding not cruel or unusual punishment to confine prisoner in infirmary for 46 days when he complained about trouble walking). The *Ford* Court also noted that the plaintiff could not "successfully complain that such an extended stay in the infirmary amounts to an 'unconstitutional' confinement. Even if the unwritten policy was constitutionally suspect, the court cannot find a constitutional deprivation where plaintiff's own complaints about his back pain necessitated such restriction of plaintiff to the infirmary." *Ford*, No. 92-7049, 1994 WL 323750, at *9. Therefore, even if there were a violation of Plaintiff's constitutional rights, it would not have been "beyond debate" in 2010 that a policy requiring inmates to remain under medical supervision while receiving narcotics such as Demerol, Fentanyl, and Vicodin was unconstitutional.

Therefore, Dr. Woodward is also entitled to qualified immunity.

## V. CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is denied, and Dr. Woodward's motion for summary judgment is granted. An accompanying Order will be entered.

_[signature]_ 3/26/18
PETER G. SHERIDAN, U.S.D.J.

14